**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **KAYLA M. DICKINSON, et al.** | : | |
| | : | **Case No. 2:12-CV-01024** |
| **Plaintiffs,** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| v. | : | |
| | : | |
| **ZANESVILLE METROPOLITAN** | : | Magistrate Judge Terence P. Kemp |
| **HOUSING AUTHORITY, et al.** | : | |
| | : | |
| **Defendants.** | : | |

### <u>OPINION & ORDER</u>

### I.  INTRODUCTION

This matter is before the Court on Defendants Zanesville Metropolitan Housing Authority and Steven Randles' (collectively, "ZMHA") Motion for Judgment on the Pleadings (Doc. 22).  Pursuant to Fed. R. Civ. P. 12(c), ZMHA moves to dismiss Plaintiffs' Amended Complaint (Doc. 17), on the grounds that it fails to state a claim, it is barred by the doctrine of *res judicata*, and is barred by the statute of limitations.  Also before the court is Defendants R.L.J. Management Company, Greenwood Homes, L.L.C., and Rita Paul's (collectively, "RLJ") Motion to Dismiss for failure to state a claim, under Fed. R. Civ. P. 12(b)(6) (Doc. 21).  For the reasons stated below, both motions are hereby **DENIED**.

### II.  PROCEDURAL POSTURE

Plaintiff Dickinson filed her Complaint on behalf of herself and her minor children on November 6, 2012 (Doc. 1), against both ZMHA and its Executive Director, Steven Randles ("Randles"), as well as against R.L.J. Management Company, a property manager, its subsidiary, Greenwood Homes, L.L.C. ("Greenwood"), and its employee, Rita Paul ("Paul").  Plaintiffs alleged race and sex discrimination under the Fair Housing Act, 42 U.S.C. § 3604 *et seq.* ("FHA") against all Defendants, as well as breach of contract claims against ZMHA.  Plaintiffs filed an Amended Complaint on January 23, 2013 (Doc. 17). Defendants ZMHA and Randles answered (Doc. 19), and filed the instant Motion for Judgment on the

Pleadings on February 15, 2013 (Doc. 22). The RLJ Defendants filed their Motion to Dismiss on February 6, 2013 (Doc. 21). These motions have been fully briefed, and are ripe for review.

### III. STATEMENT OF FACTS

Plaintiff Kayla M. Dickinson is a disabled African-American mother of five children. (*Amended Complaint*, Doc. 17, ¶ 17). Together with her minor children, Plaintiff was a resident at Coopermill Manor, a public housing complex operated by ZMHA, from November 23, 2005, until December 13, 2006. (*Id.*, ¶ 16). Plaintiff lived at Coopermill Manor under the terms of a written lease agreement signed on November 23, with a term of one year; a renewal agreement, also for a term of one year, was signed on September 29, 2006. (*Id.*, ¶ 17).

During her tenancy, Plaintiff suffered extensively from abusive conduct by the father of two of her children, Brandon Somers, who was not a resident at Coopermill Manor. (*Id.*, ¶¶ 18-20). At various times throughout 2005 and 2006, Somers would trespass at Plaintiff's home, physically abuse her, damage her property, threaten her, and disturb other residents. (*Id.*, ¶ 18). In particular, Somers appeared uninvited at Plaintiff's home and threatened her in December 2005 (*id.*, ¶ 21), physically abused her and demanded money from her in January 2006 (*id.*, ¶ 32), physically abused her and destroyed her property on October 17, 2006 (*id.*, ¶ 36), and assaulted and threatened her with a handgun on November 11, 2006 (*id.*, ¶ 45). On several of these instances, the Zanesville Police Department was notified (*see id.*, ¶¶ 36, 46-47), and ultimately Somers was arrested, convicted, and sentenced to one year in prison (*id.*, ¶ 48).

In response to each of these instances of violence, Plaintiff had various interactions with ZMHA security and management personnel. ZMHA security were slow to respond to Plaintiff's calls for help, with the result that she often had no protection against Somers' abuse, other than to call the police. (*Id.*, ¶¶ 24-25). Moreover, despite her attempts to explain the danger posed to her and her children by Somers, ZMHA employees attributed blame for the incidents to Plaintiff and merely advised her to "fix th[e] problem." (*See e.g.*, *id.*, ¶¶ 22, 34-35). ZMHA staff failed to investigate thoroughly the accuracy of

complaints against Plaintiff lodged by other tenants, and created electronic records of the incidents in which they noted Plaintiff's culpability for the disturbances. (*Id.*, ¶ 28-31, 35).

As Somers' violence against Plaintiff escalated, ZMHA staff insisted that Plaintiff was at fault. After the October 17 incident, security personnel ordered Plaintiff to "settle down and stop being a bother," and also issued her a warning. (*Id.*, ¶ 37). The same was noted in her electronic record. (*Id.*, ¶ 38). Plaintiff took whatever steps were available to her to prevent continued abuse by Somers, and also met with ZMHA's Housing Manager, Jerry Farson, to explain the situation, sometime in October 2006. (*Id.*, ¶¶ 39-40). Farson informed her that ZMHA would not protect her, and instead asked Plaintiff to move out of ZMHA housing. (*Id.*, ¶¶ 40-41). Farson threatened that ZMHA would evict Plaintiff if she did not elect to leave voluntarily. (*Id.*, ¶ 42). Fearful of losing all access to public housing, Plaintiff agreed to move out, in return for preferential placement on ZMHA's waitlist for Section 8 Housing vouchers. (*Id.*, ¶¶ 41, 44). Because such housing was not immediately available, however, Plaintiff continued to reside at Coopermill Manor. (*Id.*, ¶ 44).

As a result of the November 2006 incident, which ended in Somers' arrest, ZMHA staff ordered Plaintiff to keep Somers out of her unit, and accused her of letting Somers use the unit as a "party house." (*Id.*, ¶ 49). In vain, Plaintiff attempted to explain that Somers was uninvited, and on each occasion had demanded entry and used violence to force his way inside. (*Id.*, ¶¶ 50-51). On November 11, 2006, ZMHA staff noted in Plaintiff's electronic record that Plaintiff responded to warnings by "cuss[ing] . . . out" security staff "every time" they warned her. (*Id.*, ¶ 51). After these events, ZMHA rejected Plaintiff's next rent payment, and gave her a Notice of Termination of Lease, effective December 14, 2006. (*Id.*, ¶¶ 52-53). Plaintiff attempted to pay her rent three times in December 2006, but ZMHA rejected payment on each occasion. (*Id.*, ¶¶ 54-55).

Under threat of eviction, Plaintiff moved out of ZMHA housing on December 13, 2006. (*Id.*, ¶ 56). Unable to find Section 8 housing, Plaintiff resided with her parents for six weeks. (*Id.*, ¶¶ 57-58).

After her departure, ZMHA staff inspected her unit, and reported the property to be in good condition, making no mention of any damage caused by Somers; nevertheless, ZMHA later informed Plaintiff that she would have to pay for repairs for damages by Somers, including specifically a broken window and damaged door, before they would issue her a Section 8 Housing Choice Voucher. (*Id.*, ¶¶ 59-60). Under protest, Plaintiff complied. (*Id.*, ¶ 60).

In summer 2009, while Plaintiff was a participant in the Section 8 Housing Voucher Program, Plaintiff sought to live at certain properties managed by Defendants RLJ, Greenwood, and Paul, including Zanesville Homes II and Greenwood Homes. Plaintiff applied to live at both complexes, and was denied. (*Id.*, ¶¶ 73-75). When Plaintiff first applied, she received no response for several months regarding her application; when she called to inquire, Paul told her that her application had been lost, and invited her to reapply. (*Id.*, ¶ 78). Again receiving no response after one month, Plaintiff called again, and Paul informed her that the application was denied. (*Id.*, ¶ 79). Plaintiff received no notice of the denial, and Paul again told her to reapply. (*Id.*).

On November 17, 2009, Plaintiff applied once more. (*Id.*, ¶ 80). This time, Plaintiff was accompanied by Zanesville City Council Member Connie Norman. (*Id.*, ¶ 82). In late November, when Plaintiff inquired as to the status of this application, with Councilmember Norman on the phone, Paul denied that any application was pending. (*Id.*, ¶¶ 83-84). When Norman stated that she witnessed the application, Paul announced that the application had been denied, despite the fact that, once again, Plaintiff never received notice. (*Id.*, ¶ 85). Paul assured Plaintiff that she would investigate further, and contact Plaintiff, but never did so. (*Id.*, ¶¶ 85-86).

In early 2010, Plaintiff again inquired about her application for Greenwood Homes, and, in mid-April 2010, Paul stated the application was approved. (*Id.*, ¶¶ 88-89). But on April 27, 2010, Greenwood sent a notice to Plaintiff that the application was in fact denied, due to a "poor landlord reference." (*Id.*, ¶ 90). At this time, Plaintiff was qualified to live at Greenwood, and units were available at that location.

(*Id.*, ¶¶ 91-92). Plaintiff's attorney requested a copy of the reference on May 4, 2010. (*Id.*, ¶ 93). On May 7, 2010, Paul faxed a Landlord Reference Inquiry completed by ZMHA, dated May 7, in which ZMHA stated that Plaintiff had damaged her unit, created physical hazards to the property, menaced her neighbors, possessed weapons and drugs on the property, interfered with her neighbors' rights, and was thus evicted. (*Id.*, ¶¶ 94-96). ZMHA stated it would not rent to Plaintiff again. (*Id.*, ¶ 94). ZMHA also produced a summary of its electronic notes kept during Plaintiff's tenancy, which formed the basis for the negative reference letter. (*Id.*, ¶¶ 99-100).

In an attempt to clear her name, Plaintiff faxed Greenwood a letter and Certification of Domestic Violence (Form HUD-50066) on May 7, 2010, which advised Greenwood that Plaintiff was a victim of long-term domestic violence, including during her tenancy with ZMHA, and that Plaintiff had no control over Somers' actions. (*Id.*, ¶¶ 102-104). The letter included attachments to support her explanation, such as police reports and criminal records regarding Somers, and made clear that the negative activities discussed in the landlord reference letter were attributable to him. (*Id.*, ¶¶ 104-105, 107). When Plaintiff called Paul to discuss the letter, Paul would not listen. Instead, she stated that "[i]t doesn't matter. The fact of the matter is that I know how you people are. You can be loud and obnoxious. You're family. You people stick together." (*Id.*, ¶ 108). Defendants refused to meet in person with Plaintiff to discuss the letter. (*Id.*, ¶ 109).

Subsequently, and because of the negative reference letter, Plaintiff was denied housing by other landlords. (*Id.*, ¶ 111). When she attempted to resolve the issue with the assistance of the Fair Housing Coordinator for the City of Zanesville, Defendant Randles stated that he would look into the matter, but never returned her call, and ZMHA ultimately refused to change any part of the letter or the electronic file. (*Id.*, ¶¶ 112-116). ZMHA continues today to circulate the letter to prospective housing providers, to Plaintiff's detriment. (*Id.*, ¶¶ 116-117).

On June 23, 2010, Plaintiff filed a State of Ohio Housing Discrimination Charge against RLJ and Greenwood Homes.  (*Id.*, ¶ 120).  This complaint was sent to the United States Department of Housing and Urban Development ("HUD"), which referred the matter to the Ohio Civil Rights Commission ("OCRC").  (*Id.*, ¶ 121).  The OCRC conducted a confidential, ex parte preliminary investigation, and, on January 13, 2011, issued a decision dismissing the complaint for lack of probable cause.  (*Id.*, ¶¶ 122-125).  Plaintiff requested reconsideration, and the OCRC affirmed, on June 13, 2011.  (*Id.*, ¶ 125). Plaintiff filed a petition for review in the Muskingum County Court of Common Pleas on July 13, 2011; she voluntarily dismissed her petition on April 9, 2012, prior to adjudication on the merits.  (*Id.*).

Plaintiff also filed an administrative complaint against ZMHA on June 23, 2010.  When OCRC took no action, Plaintiff refiled.  (*Id.*, ¶ 126).  Again, OCRC undertook an ex parte preliminary investigation, and again, on February 23, 2012, the OCRC dismissed the case for lack of probable cause. (*Id.*, ¶ 127-128, 133).  On November 5, 2012, Plaintiff withdrew her request for reconsideration and dismissed the administrative action.  (*Id.*, ¶ 133).  During the pendency of the administrative petition, Jerry Farson, ZMHA's housing manager, and Tom Davis, ZMHA's head of security, confronted one of Plaintiff's potential witnesses, and accused her of defamation of character.  (*Id.*, ¶ 130).  Davis also insinuated that the witness was enabling Plaintiff to use ZMHA housing as a place for drug-related activity.  (*Id.*, ¶¶ 130-131).

Plaintiff filed the current action in federal court on November 6, 2012.  (*Id.*, ¶ 134).

### IV.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows for a case to be dismissed for "failure to state a claim upon which relief can be granted."  Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations."  *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005).  Thus, the Court must construe the complaint in the light most favorable to the non-moving party.  *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).  The Court is not required, however, to accept as true mere

6

legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Although liberal, Rule 12(b)(6) requires more. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). The complaint must "'give the defendant fair notice of what the claim is, and the grounds upon which it rests.'" *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). In short, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Courts apply the same analysis to motions for judgment on the pleadings under Rule 12(c) as they apply to motions to dismiss under Fed. R. Civ. P. 12(b)(6). *McGath v. Hamilton Local Sch. Dist.*, 848 F. Supp. 2d 831, 836 (S.D. Ohio 2012) (citing *Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir.2010)). For purposes of a motion for judgment on the pleadings, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir.2007) (internal citation and quotation omitted). At the same time, the court need not accept as true legal conclusions or unwarranted factual inferences. *Id.* (citing *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir.1999)).

## V. ANALYSIS

Defendants raise three objections to Plaintiffs' claims. First, ZMHA insists that Plaintiffs have failed to state a claim upon which relief may be granted, because the alleged actions by ZMHA do not constitute discrimination under the FHA. Similarly, the RLJ Defendants assert that Plaintiffs' claim under the FHA is too ambiguous and too speculative to state a claim. Second, ZMHA argues that Plaintiffs' claims are barred by the doctrine of *res judicata*, on the grounds that the claims were already litigated, and found lacking, before the OCRC. Finally, ZMHA argues that the claims are further barred by the two-year statute of limitations governing claims under the FHA.

## A.  Failure to State a Claim

Plaintiffs bring their claims against the ZMHA Defendants under 42 U.S.C. § 3604(b), which prohibits discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith," because of race, color, religion, sex, familial status, or national origin.  Against the RLJ Defendants, Plaintiffs assert violations of § 3604(a).  This subsection proscribes refusal to rent, or refusal to negotiate to rent, or "otherwise make unavailable or deny," a dwelling, on any of the above bases.[1]

Plaintiffs allege "disparate treatment" under the FHA (*Plaintiffs' Response*, Doc. 23, at 8), which requires proof of intentional acts by defendants, done with a discriminatory purpose.  *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977).  Plaintiffs offer indirect evidence as proof of discrimination, implicating the four-factor test and burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Under *McDonnell Douglas*, an FHA plaintiff must show:  (1) that she is a member of a racial minority; (2) that she applied for and was qualified to rent housing; (3) that she was rejected; and (4) that the housing remained available thereafter. *Mencer v. Princeton Square Apartments*, 228 F.3d 631, 634-35 (6th Cir. 2000).  Once the prima facie case is established, the burden shifts to the defendant to offer legitimate, non-discriminatory reasons for their action; if successful, the burden returns to the plaintiff to identify evidence of pretext masking unlawful discrimination.  *Id.* at 634.

The *McDonnell Douglas* framework, however, sets out "an evidentiary standard, not a pleading requirement."  *Lindsay v. Yates*, 498 F.3d 434, 439 (6th Cir. 2007) ("*Lindsay I*").  Thus, a plaintiff is not required to allege every element of the prima facie case.  Rather, she may survive a Rule 12(b)(6) challenge with merely "a short and plain statement of the claim," consistent with Fed. R. Civ. P. 8(a), provided that it "gives the defendant fair notice of what the plaintiff's claim is and the grounds upon

---

[1] Plaintiffs also allege violations under 42 U.S.C. § 3604(c) against the RLJ Defendants.  This provision is irrelevant to Plaintiffs' case.  Subsection (c) was intended to prevent "discriminatory advertisements" both by "newspapers as well as any other publishing medium." *United States v. Hunter*, 459 F.2d 205, 211 (4th Cir. 1972), *cert. denied*, 409 U.S. 934 (1972).  The Amended Complaint contains no allegations against RLJ suggesting anything of the sort.

which it rests." *Id.* (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002)). Under *Lindsay I*, a plaintiff in this Circuit need allege only (a) the statutory basis for her claims, and (b) the factual predicate of those claims, such that the defendants are "apprise[d] . . . of the [] claims and the grounds upon which they rest." *Id.* at 440.[2] Moreover, the Court of Appeals has emphasized "the well established principle that in interpreting the Fair Housing Act, courts are to give effect to the 'broad remedial intent of Congress embodied in the Act.'" *Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews, Inc.*, 210 F. App'x 469, 480 (6th Cir. 2006) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982)).

In this case, Plaintiffs have satisfied the threshold requirements set by *Lindsay I*. Plaintiffs have set forth the statutory bases for their claims, and described in detail the factual predicates supporting them. The Defendants cannot say that they have not been apprised of the claims against them and the grounds on which they rest.

*1. ZMHA Defendants*

With regard to ZMHA, Plaintiffs have described a pattern of discrimination spanning several years. Over the two years she lived at Coopermill Manor, Plaintiff was regularly tormented by Somers, who terrorized her, threatened her and her children, (*Amended Complaint*, Doc. 17, ¶¶ 18-20, 32), physically assaulted her (*id.*, ¶ 21, 45), forced himself into her home (*id.*, ¶ 21), and destroyed her property (*id.*, ¶ 36). In response to these incidents, and the threats against her, ZMHA blamed and reprimanded her after each event, (*see id.*, ¶¶ 22, 24-25, 34-35, 37, 39-40, 51), in contravention of the language and intent of VAWA. *Compare* 42 U.S.C. § 1437f(o), n. 3, *infra*. ZMHA did not investigate the accuracy of complaints against Plaintiff, but instead created permanent electronic records memorializing the inaccurate accusations against Plaintiff. (*Id.*, ¶ 28-31, 35, 38). ZMHA ordered

---

[2] In *Lindsay I*, the Court of Appeals considered the impact of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), on the continuing validity of *Swierkiewicz*, and found the rationale still to be valid. 498 F.3d at 440 n.6. In the time since *Lindsay I*, the Supreme Court has decided *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), which substantially reevaluated the pleading requirements under the Federal Rules. However, *Lindsay I* remains a valid statement of the law governing FHA pleadings even after *Iqbal*. *Williams v. Richland Cnty. Children Servs.*, 489 F. App'x 848, 852 (6th Cir. 2012).

Plaintiff to leave Coopermill Manor (*id.*, ¶¶ 40-42), and in the end attempted to evict her (*id.*, ¶¶ 52-56). Several years later, ZMHA continued its discriminatory actions by sending multiple negative reference letters to other landlords, ensuring that Plaintiffs would be unable to obtain adequate new housing. (*Id.*, ¶¶ 90-100, 111, 116-117).

These allegations state a claim under *Lindsay I*. ZMHA consistently and regularly interfered, or allowed Somers to interfere, with Plaintiffs' ability to live at Coopermill Manor. ZMHA assigned blame to Plaintiff for actions beyond her control, and used its mounting, but inaccurate, evidence to attempt to force her to leave her apartment. Ultimately, ZMHA began procedures to evict Plaintiffs from their apartment, the very essence of intrusion into the "privileges of . . . rental of a dwelling," as well as the "provision of services or facilities" in connection with a rental, under § 3604(b). *See, e.g.*, *Bloch v. Frischholz*, 587 F.3d 771, 779 (7th Cir. 2009) (the "right to inhabit the premises is a 'privilege of sale'" and thus "actual or constructive eviction" violates § 3604(b)); *Cox v. City of Dallas, Tex.*, 430 F.3d 734, 747 (5th Cir. 2005) ("constructive conviction [is] a clear discriminatory condition of 'sale or rental of the dwelling,'" and is therefore proscribed by § 3604(b)); *Woodard v. Fanboy, L.L.C.*, 298 F.3d 1261, 1265 (11th Cir. 2002) (§ 3604(b) prohibits discriminatory eviction).

Moreover, ZMHA was aware, or should have been aware, that Plaintiff was the victim of long-standing and continuing domestic violence. Accordingly, dereliction of its obligations under the Violence Against Women Act ("VAWA"), *see* 42 U.S.C. § 1437f(o),[3] and apportionment of blame for the results

---

[3] Section 1437f(o) requires that a landlord receiving low-income housing assistance: must not refuse prospective tenants merely on the basis that she "is or has been a victim of domestic violence, dating violence, or stalking," § 1437f(o)(6)(B); and must "not terminate any tenancy except for serious or repeated violations of the terms and conditions of the lease," § 1437f(o)(7)(C). Moreover under the version of § 1437f(o) in force at the time of these events, VAWA provided that

> an incident or incidents of actual or threatened domestic violence, dating violence, or stalking shall not be construed as a serious or repeated violation of the lease by the victim or threatened victim of that violence and shall not be good cause for terminating the tenancy or occupancy rights of the victim of such violence.

§ 1437f(o)(7)(C) (2011).

of the domestic violence (*see* Doc. 17, ¶ 118), could give rise to an inference that ZMHA acted with intent to discriminate on the basis of gender. *Bouley v. Young-Sabourin*, 394 F. Supp. 2d 675, 678 (D. Vt. 2005) (attempt by landlord to evict plaintiff 72 hours after domestic dispute could give rise to inference of discrimination on the basis of gender); *Meister v. Kansas City*, No. 09-2544-EFM, 2011 WL 765887, at *6 (D. Kan. Feb. 25, 2011) ("evidence that defendant knew that domestic violence caused damage to plaintiff's housing unit would help support a claim that she was evicted under circumstances giving rise to an inference of sex discrimination.").

Plaintiffs have successfully described the statutory basis for their claim, and the factual predicate of those claims. At this stage of the litigation, nothing further is required.

### 2. RLJ Defendants

Plaintiffs similarly succeed in apprising RLJ of the basis and predicate for their claims against it. Plaintiffs allege that they were consistently misdirected, misinformed, lied to, and ultimately denied in their requests for housing with RLJ. Plaintiff applied at least four times to live at Greenwood (Doc. 17, ¶¶, 73-74, 80, 88, 102-107); despite the fact that Plaintiff was qualified to live there (*id.*, ¶ 91), and that housing was available for rent at Greenwood (*id.*, ¶ 92), she was denied three times (*id.*, ¶¶ 79, 85, 90). Greenwood and Paul engaged in a pattern of delay and obfuscation over the course of nine months, (*id.*, ¶¶ 78, 83-86, 97-98, 108-109), refused to inform Plaintiff as to her application status (*id.*, ¶¶ 79, 84, 86-87, 109) and lied about losing Plaintiff's application, (*id.*, ¶ 78, 83-85). When Paul denied Plaintiff's application for the final time, she concealed her discriminatory motives by citing to the negative landlord reference sent by ZMHA (*id.* ¶¶ 90, 94), even though that letter was not created until over a week after Plaintiff's rejection (*id.*, ¶ 96-97). In the end, she announced directly to Plaintiff that she had no intention of allowing Plaintiff, or any of "[her] people," to rent at Greenwood, invoking distasteful racial stereotypes to justify her bigotry. (*Id.*, ¶¶ 107-109).

These allegations state a claim for relief. The FHA "prohibit[s] all forms of discrimination, sophisticated as well as simpleminded, and thus disparity of treatment between whites and blacks, burdensome application procedures, and tactics of delay, hindrance, and special treatment" all are forbidden. *McDonald v. Verble*, 622 F.2d 1227, 1234 (6th Cir. 1980) (quoting *Williams v. Matthews Co.*, 499 F.2d 819, 826 (8th Cir. 1974)). With regard to burdensome and dilatory application processes, the FHA

> recognizes that decisionmakers can discriminate against applicants long before they reach the point of deciding whether to accept an application. They may discriminate in how they solicit and encourage applications. They may discriminate in how they treat applicants who ask questions about the dwelling, and in the process by which they inform applicants about a residency opening. They may also discriminate in the terms of residency which they offer to an otherwise successful applicant. . . . [T]hese actions might be just as effective in limiting housing opportunities for members of a protected group as any policy which ultimately turns them away on the basis of their group membership

*United States v. Lorantffy Care Ctr.*, 999 F. Supp. 1037, 1045 (N.D. Ohio 1998).

In this case, Plaintiffs have demonstrated not only burdensome application processes, undue delay, withholding of information, and false statements, but also ultimate denial on pretextual grounds. Paul's insistence that she would not rent to Plaintiffs because she "kn[e]w" that Plaintiff's "people" would be "loud and obnoxious," and would "stick together" only buttresses the inference of pretext behind Paul's efforts to prevent Plaintiffs from renting at Greenwood. A prima facie case for discrimination is established "whenever the actions taken by the property owner lead one to reasonably 'infer, if such actions remain unexplained, that it is more likely than not that such actions were based on discriminatory criterion' such as race." *Lindsay v. Yates*, 578 F.3d 407, 417-18 (6th Cir. 2009) ("*Lindsay II*") (quoting *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 576 (1978)). As long as such evidence exists, when viewed "in light of common experience," the required "inference of discrimination" has been satisfied. *Id.* at 418. *Cf. Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 269-70 (3d Cir. 2010) (use

of the phrase "you people," without any other evidence of discriminatory animus, is not enough to establish *direct* evidence of discrimination).

Moreover, the conduct and statements of an employee may be probative of whether an ultimate adverse action directed at a plaintiff was racially motivated.  *See Bartlett v. Gates*, 421 Fed.Appx. 485, 491 (6th Cir. 2010) ("[D]iscriminatory remarks can . . . also serve as probative evidence of pretext . . . even when remarks are made by a nondecisionmaker."); *see also United States v. Youritan Const. Co.*, 370 F. Supp. 643, 651 (N.D. Cal. 1973) *aff'd in part, remanded in part*, 509 F.2d 623 (9th Cir. 1975) ("Principals who provide an atmosphere in which agents may and do, easily and without supervision or control, make housing unavailable because of race, engage in a pattern or practice of discrimination even though no specific instructions were given to agents to do so.").

In light of common experience, and considering in total the burdensome practices, delays, and misstatements made by RLJ, together with its pretextual denial of Plaintiffs' application, and colored by the comments made by Paul, Plaintiffs have made the required showing to establish a prima facie case under the FHA.

### B.  Res Judicata

The doctrine of *res judicata*, also called "claim preclusion," provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in a prior action." *In re Alfes*, 709 F.3d 631, 638 (6th Cir. 2013).  This doctrine is applicable as much to the decisions of state administrative agencies as it to those of state courts, provided certain conditions are met.  *Univ. of Tennessee v. Elliott*, 478 U.S. 788 (1986).  In short, federal courts must "give the agency's fact-finding the same preclusive effect to which it would be entitled in the State's courts."  *Id.* at 799.  Accordingly, this Court must look to the preclusive effect Ohio state courts give to administrative decisions similar to the one at issue here.  A review of Ohio law, however, reveals that Plaintiffs' claims are not barred.

Under Ohio law, administrative agency decisions can be given preclusive effect so long as "the administrative body acted in a judicial capacity" when it considered the claims of the parties. *Lupo v. Voinovich*, 858 F. Supp. 699, 702 (S.D. Ohio 1994) (citing *Superior's Brand Meats v. Lindley*, 403 N.E.2d 996 (Ohio 1980)). In addition, it is necessary that "the factual disputes resolved [by the agency] were clearly relevant to issues properly before it," and that the parties "had a full and fair opportunity to argue their version of the facts and an opportunity to seek out review of any adverse findings." *Pullar v. Upjohn Health Care Serv.*, 488 N.E.2d 486, 490 (Ohio Ct. App. 1984).

Ohio law is clear that *formal* proceedings before the OCRC can satisfy the "threshold due process requirements" necessary to give an administrative ruling preclusive effect. *See, e.g.*, *State ex rel. Republic Steel Corp. v. Ohio Civil Rights Comm.*, 339 N.E.2d 658, 662-63 (Ohio 1975) (Formal hearings before the OCRC are generally held to be of a judicial nature and to provide sufficient opportunity to litigate the issues.). When the OCRC finds "no probable cause," however, the proceedings before it never reach the level of formality sufficient to satisfy the requirements of due process. This is because

> [p]rior to the filing of a complaint, the procedure set out in the statute is informal and in the nature of an *ex parte* proceeding. Although the commission investigates the charge, it does not seek to receive formal evidence. Unlike the procedure set forth for a post-complaint formal hearing, [O.R.C. § 4112.05] does not provide for the swearing of witnesses, the taking of testimony, or the keeping of a record during the preliminary investigation.

*McCrea v. Ohio Civil Rights Comm'n*, 486 N.E.2d 143, 146 (Ohio Ct. App. 1984).

Thus, in cases where the OCRC does not issue a complaint, and accordingly where a plaintiff is "not permitted to commence an investigation, to direct or participate in directing an investigation, or to determine the existence of probable cause," and is "not allowed to examine or cross-examine witnesses, lodge objections, or otherwise directly participate," the OCRC decision is not preclusive. *Doan v. S. Ohio Adm. Dist. Council, Internat'l Union of Bricklayers & Allied Craftworkers*, 763 N.E.2d 639, 643 (Ohio Ct. App. 2001). *Cf. Smith v. Friendship Vill. of Dublin, Ohio, Inc.*, 751 N.E.2d 1010, 1014 (Ohio 2001) (finding that the filing of a discrimination complaint with the OCRC under O.R.C. § 4112.05 does not

14

preclude the filing of an "independent civil action," where the OCRC declined to proceed); *Ramudit v. Fifth Third Bank*, No. C-030941, 2005-Ohio-374 (Ohio Ct. App. Feb. 4, 2005) *opinion amended on reconsideration*, 2005-Ohio-978 (Ohio Ct. App. Mar. 4, 2005) (Res judicata "do[es] not apply to a finding of 'no probable cause' by the civil rights commission and do[es] not preclude a civil action for discrimination or retaliatory discharge," because the plaintiff "did not have the opportunity to fully and fairly litigate the issues raised in the civil suits in the proceedings before the civil rights commission because of the nature of those proceedings.").

In those cases where an OCRC finding of no probable cause *has* been given preclusive effect, full review by a state court has been deemed to be "critical" in establishing preclusion. *See, e.g.*, *Stallings v. Goshen Dairy Stores, Inc.*, No. 95-3228, 89 F.3d 835, at *3-4 (6th Cir. June 27, 1996) (OCRC proceedings "meet the threshold due process requirements," so that "the state court proceeding [reviewing the OCRC determination] merits preclusion.").[4] *Compare Astoria Fed'l Savings & Loan Ass'n v. Solimino*, 501 U.S. 104, 106 (1991) (administrative determinations made with respect to an ADEA claim are not entitled to preclusive effect in federal proceedings, when not reviewed by a court).

In this case, the OCRC's finding of no probable cause has gone unreviewed. Plaintiffs have alleged, and Defendants do not dispute, that on January 13, 2011, the OCRC dismissed Plaintiff's complaint against the RLJ defendants for lack of probable cause (*Amended Complaint*, Doc. 17, at ¶ 125). After reconsideration, the complaint was against dismissed, on July 13, 2011. (*Id.*). Plaintiffs filed an appeal with the Muskingum County Court of Common Pleas, but voluntarily dismissed her petition on April 19, 2012, prior to adjudication on the merits. (*Id.*). Similarly, on February 23, 2012, the OCRC dismissed the complaint against the ZMHA Defendants for lack of probable cause. (*Id.* at ¶ 133). Plaintiffs requested reconsideration, but withdrew their request and voluntarily dismissed her complaint

---

[4] ZMHA's representation of the holding in *Stallings* reflects a misreading of the case. (*See* Doc. 22 at 6-7). While the Court is hesitant to impute improper motive to the parties' briefs, which of necessity must attempt to persuade, ZMHA's reading strains credulity, ignores the opinion's clear language, and calls into question the candor with which it addresses this Court.

15

on November 5, 2012. (*Id.*). *Res judicata* does not apply where plaintiffs voluntarily dismiss their complaint prior to final adjudication on the merits. *Ganley v. Mazda Motor of America, Inc.*, 367 F. App'x 616, 622 (6th Cir. 2010) (citing *In re Lima Mem'l Hosp.*, 675 N.E.2d 1320, 1323 (Ohio Ct. App. 1996). Accordingly, Plaintiffs' claims are not barred on this ground.

### C. Statute of Limitations

Finally, ZMHA challenges Plaintiffs' ability to recover on the grounds that their claims are barred by the limitations period imposed by 42 U.S.C. § 3613. Section 3613(a)(1)(A) provides, in pertinent part, that an aggrieved person "may commence a civil action in an appropriate [court] not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . to obtain appropriate relief." This period does not include "any time during which an administrative proceeding under [Title 42, Chapter 45, Subchapter I] was pending with respect to a complaint or charge under this subchapter based upon such discriminatory practice." *Id.* § 3613(a)(1)(B).

The parties do not dispute that the pendency of the OCRC proceedings tolled the limitations period provided by § 3613. Thus, beginning on June 23, 2010, (*Amended Complaint*, Doc. 17, at ¶ 120), and lasting until Plaintiffs withdrew their request for reconsideration, on November 5, 2012 (*Id.*, at ¶ 133), the limitations period did not run. Plaintiffs filed the present action one day later, on November 6, 2012. The relevant inquiry, then, is whether Plaintiffs' claims are barred by the passage of time from the events in 2005 and 2006, and Plaintiffs' termination of tenancy in December 2006, until the filing of the administrative action in 2010. The Court finds that they are not. Because the last act of discrimination is alleged to have taken place in early May 2010, Plaintiffs' filing of their administrative complaint, less than two months later, is well within the limitations period.

Plaintiffs allege not just one discrete act of discrimination, but rather a "continuing violation." The "continuing violation doctrine" has the effect "of preserving discrimination claims based on incidents that occurred outside of the limitations period, if those incidents were part of a larger discriminatory 'practice' that continued into the limitations period." *Kennedy v. City of Zanesville, OH*, 505 F. Supp. 2d

456, 490 (S.D. Ohio 2007) (citing *Havens*, 455 U.S. at 379).  When a plaintiff challenges such an "unlawful practice," rather than merely one incident of improper conduct, the complaint is considered timely as long as the "last asserted occurrence of that practice" takes place within the limitations period. *Havens*, 455 U.S. at 380-81 (footnote omitted).  The purpose of this doctrine is to protect victims of discrimination, who may not recognize violations as legally actionable "until future incidents demonstrate a pattern." *Kennedy*, 505 F. Supp. 2d at 490.  In applying the "continuing violation" theory of injury, moreover, courts "are to give effect to the broad remedial intent of Congress embodied in the [FHA]," and ensure "a less restrictive interpretation of the [FHA's] tolling provisions." *Fair Housing Council*, 210 F. App'x at 480 (quotation omitted).

The Sixth Circuit has set out a three-part test to determine whether a continuing violation exists: (1) a "defendant's wrongful conduct must continue after the precipitating event that began the pattern"; (2) "injury to the plaintiff must continue to accrue" after that event; and (3) "further injury to the plaintiffs must have been avoidable if the defendants had at any time ceased their wrongful conduct." *Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999).  Importantly, "a continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Id.* (quotation omitted).  Moreover, "[p]assive inaction . . . does not support a continuing violation theory." *Id.*

In this case, Plaintiffs allege that ZMHA engaged in a pattern of discriminatory conduct against her, from the date of the beginning of her tenancy in November 2005.  She asserts that ZMHA held her responsible for the acts of her abuser (Doc. 17, ¶¶ 18-56), and filed reports of violations against her on account of his actions (*id.*, ¶¶ 29-31, 35, 38, 51), attempted to terminate Plaintiff's lease (*id.*, ¶¶ 54-55), and ultimately evicted her on December 13, 2006 (*id.*, ¶ 56).  Moreover, in reliance on the inaccurate statements entered into its electronic records, and in furtherance of its discriminatory practices, ZMHA issued a negative landlord/tenant reference letter on May 7, 2010.  (*Id.*, ¶ 95-97).  ZMHA has refused to correct the inaccuracies in the letter, despite Plaintiff's requests (*id.*, ¶¶ 112-116), and has allegedly issued the same letter to other prospective landlords (*id.*, ¶ 111).

Plaintiffs have succeeded in stating a continuing violation. First, Defendants' conduct began with its discriminatory actions, which interfered with Plaintiffs' ability to procure housing, as early as late 2005 or early 2006. The conduct continued throughout 2006, when ZMHA attempted to evict Plaintiffs (*id.*, ¶¶ 42, 52-56), and even into 2010, which falls well within the limitations period. The fact that the incidents occurred several years apart does not extinguish a continuing violation; rather "[s]o long as the later incidents are related to the earlier ones, a gap in time between the incidents does not defeat the claim." *Everson v. City of Madison*, 672 F. Supp. 2d 881, 887 (W.D. Wis. 2009) (finding a continuing violation, over a period of 14 years, in Title VII sexual harassment case). Moreover, the various acts alleged by Plaintiffs continued to injury Plaintiffs throughout this time. Plaintiff was sanctioned for the actions of her abuser, evicted from her housing, and her ability to find new housing was impaired by the negative reference. Finally, further injury to the Plaintiffs could have been avoided, had Defendants ceased their discriminatory conduct – either while Plaintiffs still resided at Defendants' properties, or after – had Defendants amended their records as requested, and sent accurate reference letters to prospective landlords. These allegations satisfy the requirements of *Tolbert*.

This case bears a strong similarity to *SternJohn v. Kreisler*, 238 F. Supp. 2d 1104, 1110 (D. Minn. 2003), where the District of Minnesota found that the refusal by the defendants to issue a positive landlord reference letter constituted another incident in a pattern of discriminatory conduct, thus preserving the claim and rendering it timely. In *SternJohn*, the plaintiffs had alleged a number of discriminatory acts occurring outside the limitations period for filing of an administrative action. The court found that the claim was not time-barred, however, because "the allegation of a discriminatory refusal to give a housing reference would mark yet another incident in . . . 'a continuing violation manifested in a number of incidents.'" *Id.* (quoting *Havens*, 455 U.S. at 381). The court reasoned that both the plain language of the FHA, its legislative history, and the policy behind it indicated that a "discriminatory housing practice" could include even those actions undertaken while not in privity with the plaintiffs (such as refusal to write a letter even after the end of a lease). *Id.* at 1110-11.

18

Accordingly, Plaintiffs have stated a claim for a continuing violation, the last act of which occurred within the limitations period set by § 3613. Plaintiffs' claims are not time-barred.

## VI. CONCLUSION

For the foregoing reasons, ZMHA's Motion for Judgment on the Pleadings (Doc. 22) is hereby **DENIED**. RLJ's Motion to Dismiss (Doc. 21) is similarly **DENIED**.

**IT IS SO ORDERED.**

    /s/ Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 30, 2013**